IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER BAST,

                           Plaintiff,

     v.                                              OPINION and ORDER

FRANK BISIGNANO,                               25-cv-64-amb
COMMISSIONER of SOCIAL SECURITY,[1]

                          Defendant.

---

Plaintiff Christopher Bast seeks review of an Administrative Law Judge's ("ALJ") opinion denying his application for Social Security disability benefits. The ALJ concluded plaintiff could perform several jobs in the national economy and so was not disabled. In reaching that conclusion, the ALJ explained why he found three medical professionals' examination reports minimally persuasive and against the weight of the other evidence in the record. The ALJ also explained how the severity of fibromyalgia pain plaintiff described was not corroborated or consistent with medical evidence nor plaintiff's daily habits and lifestyle. Plaintiff appealed the ALJ's decision to this court after the Social Security Appeals Council denied plaintiff's application for review. Plaintiff now seeks remand, arguing the ALJ failed to provide substantial evidence justifying his discounting of the three examination reports and plaintiff's allegations of fibromyalgia pain.

For the reasons given below, plaintiff's motion for summary judgment seeking remand, Dkt. 13, is DENIED.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

FACTUAL BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income in December 2021, alleging disability beginning on August 1, 2019. Dkt. 10 at 288–94. Plaintiff's applications were denied in November 2022 and upon reconsideration in October 2023. *Id.* at 88–142. An ALJ then held a hearing on June 6, 2024. *Id.* at 58–87. After reviewing the evidence and listening to the testimony of plaintiff and a vocational expert ("VE"), the ALJ found plaintiff not disabled. *Id*. at 23–49. In a 28-page decision, the ALJ followed the five-step sequential evaluation of disability set out by the regulations, 20 C.F.R. § 404.1520.

## A. Plaintiff's work and activity history

At the hearing, plaintiff explained his work history. He had been working "odd jobs" intermittently up to "last spring." Dkt. 10 at 63. Two years prior to the hearing, plaintiff was working at a greenhouse and landscaping store three days a week, six hours a day, for approximately four months. *Id.* Plaintiff said that he only worked six hours because he would become "real stiff and sore" and "extremely fatigued" by one or two o'clock. *Id.* Plaintiff also noted that his difficulty getting along with one of his coworkers influenced his decision to quit. *Id.* at 67.

Plaintiff then expounded on his day-to-day activities, which involved "get[ting] outside as much as [he] could," tending to his six egg-laying chickens, cleaning the coop, working on his vegetable garden, and walking around to stay active. *Id.* at 70, 378. In his application for disability benefits, plaintiff noted that he also takes care of his family's dogs, cleans, does laundry, undertakes household repairs, and mows the grass. *Id.* at 449. After around four to

six hours of engaging in these activities, his fibromyalgia pain would force him to stop and rest the remainder of the day.  *Id.* at 70, 378, 449.

## B.  Medical examinations and reports

The ALJ considered medical examination reports from psychologists Dr. Marcus Desmond, Dkt. 10 at 1234, and Dr. Danielle Huber, *Id.* at 815.  The ALJ also reviewed a medical source statement from physician assistant Nathan Schoeppach, who treated plaintiff on a regular basis.  *Id.* at 1426.  Dr. Marcus opined plaintiff was moderately-to-markedly limited in his ability to understand, recall, and apply information, interact effectively with coworkers, supervisors, and the general public, concentrate, persist, and maintain pace, and manage his activities of daily living.  *Id.* at 1236.  Dr. Huber noted plaintiff's reports of anxiety, ADHD, and difficulty attending to tasks.  *Id.* at 817.  Dr. Huber opined that plaintiff could work on a task for fifteen minutes at a time and could develop a schedule with extra time built in for time management and extra breaks.  *Id.* at 820.  PA Schoeppach opined that plaintiff was moderately limited in his ability to understand, remember, and carry out short and simple instructions and markedly limited in his ability to maintain attention and concentration.  *Id.* at 1428.

Other medical reports in the record indicated plaintiff retained normal strength, full range of motion, normal gait, appropriate mood, behavior, judgment, insight, and unremarkable thought content and process.  *See id.* at 452, 460, 483, 572, 580–81, 614, 617, 663, 842, 849–50, 1392–93, 1244.

Plaintiff noted his struggles with fibromyalgia pain many times throughout the record, citing it as the primary reason he would need to take frequent breaks or stop being active all together by the afternoon.  *See id.* at 64.  Plaintiff noted that moving more slowly during tasks

would help limit the pain and that "a big part of controlling the symptoms is knowing how to not overdo it." *Id.* at 64–65. A reviewing nurse practitioner noted in September 2020 that plaintiff's fibromyalgia-associated neck pain had "not been an issue for at least 6 months." *Id.* 565. Physical therapy and Botox injections would help significantly improve his symptoms. *Id.* at 335.

## C. ALJ's opinion

In his opinion issued August 9, 2024, the ALJ discussed his findings. At step one, the ALJ concluded that plaintiff had engaged in substantial gainful employment from May 1, 2022, through August 31, 2022, working at a foster care center and the greenhouse store. *Id.* at 19. The ALJ explained that, although plaintiff reported that he had not been able to complete all the duties other employees were expected to do and that he had been given accommodations, he had not provided any documentation supporting those allegations. *Id.* at 26. The ALJ noted that the nature of the job and time period "strongly suggest the seasonal temporary job ended with the [growing season]" rather than because of plaintiff's impairments. *Id.*

At step two, the ALJ determined that plaintiff had severe impairments including cervical dystonia, fibromyalgia, ADHD, generalized anxiety disorder, and minor neurocognitive disorder. *Id.* At step three, the ALJ explained that the objective medical record and record as a whole did not establish that the severity of plaintiff's impairments met or equaled the criteria for any impairment listed in 20 C.F.R. 404, which would have made plaintiff disabled as a matter of law. *Id.* at 27–28.

At step four, the ALJ determined that plaintiff had the residual functional capacity (RFP) to perform light work with customary breaks and with occasional contact with the general public, supervisors, and coworkers. *Id.* at 34. The ALJ explained that plaintiff's

statements concerning the intensity, persistence, and limited effects of the symptoms of plaintiff's impairments were not entirely consistent with the medical and other evidence in the record. Specifically, the ALJ noted that plaintiff's physical exams did not show the kind of abnormalities one would expect to be associated with the level of chronic pain, fatigue, and cognitive symptoms plaintiff described. *Id.* at 36. For instance, the ALJ pointed to plaintiff's normal gait and lack of mobility or ambulatory assistance devices, stable weight, and generally unremarkable medical imaging and exam results taken over the past ten years. *Id.* at 35–37.

Regarding plaintiff's fibromyalgia, the ALJ noted that drug therapy, topical CBD products and Reishi mushroom powder, physical therapy, and Botox injections over the years made it manageable for plaintiff, who denied constitutional symptoms and had unremarkable exam findings. *Id.* at 31. In addition, the ALJ pointed to plaintiff's full strength and range of motion, as well as plaintiff's ability to shave, study, and drive without discomfort and his ability to shovel snow, change his car's oil, and cut firewood with less pain and stiffness. *Id.* at 37. Finally, the ALJ commented on plaintiff's generally active lifestyle, including spending time outdoors and hiking. *Id.* at 43.

The ALJ then addressed the medical opinions and findings he reviewed.[2] *Id.* at 46. The ALJ declared that PA Schoeppach's statement was not persuasive because, although he was plaintiff's long term care provider, he provided little supportive explanation for his conclusions and occasionally gave opinions contrary to plaintiff's symptoms. For example, he concluded that plaintiff was struggling to maintain a healthy weight, but records reflect a stable weight without special attention or treatment. *Id.* PA Schoeppach's conclusions about the severity of

---

[2] The ALJ addressed all the relevant medical exam reports, but only the three relevant to this case are discussed in this opinion.

plaintiff's mental impairments were also at odds with his mental status exams, formal testing, and daily activities. *Id.* Further, PA Schoeppach's conclusions about plaintiff's functional limitations stemming from his fibromyalgia were "much more extreme than would be consistent with the limited and conservative course of treatment with very limited follow-up," the improvement with treatment like Botox and physical therapy, and plaintiff's daily activity level. *Id.*

The ALJ announced that Dr. Desmonde's opinion was not fully persuasive because it was based on a one-time exam, and his conclusions were not overall consistent with the ongoing unremarkable mental status exam results, limited course of treatment, and good stability and high activity rate, including plaintiff's ongoing part time work. *Id.* at 47. The ALJ agreed with Dr. Desmonde that plaintiff may have moderate limitations in interacting, concentrating, persisting, and maintaining pace, but concluded that plaintiff's RFC addressed those moderate limitations. *Id.*

Finally, the ALJ found Dr. Huber's opinion partially persuasive because it was based on a one-time exam and because her conclusions were stated in vague terms and not fully consistent with the evidence of plaintiff's abilities. *Id.* The ALJ agreed that Dr. Huber's treatment recommendations were generally consistent for someone with ADHD, but that they were too restrictive given the evidence of plaintiff's ability to focus and complete tasks in his personal and professional life. *Id.* Moreover, Dr. Huber recommended treatment for some things like sleep issues that plaintiff was not actively seeking to treat at the time of the exam. *Id.* The ALJ concluded that any of the recommendations Dr. Huber made that were consistent with the evidence in the record were sufficiently addressed by plaintiff's RFC.

Following the ALJ's denial of plaintiff's application, plaintiff filed a request with the Appeals Council, which was denied in December 2024. *Id.* at 7. Plaintiff filed this suit seeking remand in January 2025. Dkt. 1.

## LEGAL STANDARDS

The Social Security Act, 42 U.S.C. §§ 405(g) & 1382(c)(3), authorizes review of the Commissioner's final decision. Upon review, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (same). The court reviews the ALJ's opinion to determine whether it reflects an adequate logical bridge from the evidence to the conclusions and will "reverse only if the record 'compels' a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010). The Supreme Court has emphasized that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

The court's review is deferential, and the court may not displace the ALJ's judgment by reweighting evidence, resolving evidentiary conflicts, or making its own credibility determinations. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021); *Pavlicek v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

ANALYSIS

Plaintiff raises two issues. First, he argues that the ALJ failed to adequately evaluate the three medical opinions of PA Schoeppach, Dr. Huber, and Dr. Desmonde. Second, he argues that the ALJ erred by failing to support his assessment and conclusions regarding plaintiff's subjective pain symptoms with substantial evidence. The court addresses each argument in turn.

## A. The three medical opinions

Plaintiff argues the ALJ failed to support with substantial evidence the reasons he disagreed with Dr. Desmonde's, Dr. Huber's, and PA Schoeppach's conclusions regarding plaintiff's marked limitations in various abilities. Plaintiff makes substantially similar arguments against the ALJ's evaluation of each report, so the court will address plaintiff's grievances generally. Plaintiff argues that the ALJ was not permitted to discount the medical opinions just because they were based on one-time exams as one-time exams are routine within the Social Security context. Dkt. 14 at 12. He also argues the ALJ failed to carry out a sufficiently robust analysis of the supportability and consistency of the various opinions in violation of 20 C.F.R. §§ 404.1520c & 416.920c. *Id.* Specifically, plaintiff contends that the ALJ relied too much on the evidence of his daily life and activities in concluding the opinions were not persuasive and made conclusory statements about their inconsistency with other evidence. *See generally id.* at 14–19.

The court finds adequate evidence to support the ALJ's treatment of the medical opinions. Contrary to plaintiff's argument, the ALJ did not discount the opinions solely because they were made after a one-time exam. He merely noted that the limited treatment relationship was a factor, which is permissible under 20 C.F.R. §§ 404.1520 & 416.920.

Further, the myriad examples of plaintiff's physically active lifestyle, including gardening, chicken tending, dog walking, snow shoveling, hiking, and part time work are legitimate evidence that cut against the treatment providers' assessment of marked physical limitations. Moreover, the ALJ pointed to several countervailing medical and psychiatric exam results and conservative treatment history that all diminished the supportability of the three opinions' conclusions.  Relatedly, the internally inconsistent observations, such as that plaintiff was struggling to maintain weight, and treatment recommendations for issues plaintiff did not report, like significant trouble sleeping, diminished the consistency of the opinions.  In addition to the one-time examination by two of the providers, the court can understand the ALJ's logic and reasoning for finding these three opinions minimally persuasive.

The ALJ's robust explanation here is distinct from those offered in the cases plaintiff cites in support, in which the ALJ either relied *solely* on examples of significantly less demanding housework to discount subjective symptoms[3] or made entirely conclusory statements about an opinion's inconsistency with other evidence in the record.[4]  In this case, the court is not "left

---

[3] *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (criticizing the undue weight the ALJ placed on the claimant's very limited housework, including four minutes of vacuuming, retrieving mail from the mailbox, and shopping using a motorized cart, all of which left the claimant exhausted).

*Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (noting that limited, light household chores like cooking simple meals and vacuuming do not undermine allegations of disabling pain).

[4] *Galarza v. Berryhill*, No. 17 C 3804, 2018 WL 4489584, at *3 (N.D. Ill. Sept. 19, 2018) (finding the ALJ "gave no rationale" for his conclusion that watching television and doing certain chores equated to a normal ability to concentrate).

*Jose V. v. Kijakazi*, No. 20 C 6975, 2022 WL 3139571, at *3 (N.D. Ill. Aug. 5, 2022) ("the ALJ completely failed to expound upon the supportability and consistency of the opinions").

to merely speculate about reasons behind the ALJ's persuasiveness finding or lack thereof." Dkt. 14 at 18 (citing cases). The ALJ provided substantial evidence sufficient for the court to fully comprehend why he found these opinions inconsistent with the bulk of other evidence in the record and deemed them unpersuasive. The court will not remand the case on these grounds.

## B. Subjective symptoms

Plaintiff contends the ALJ erred by failing to sufficiently explain how plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms and pain were not consistent with the medical or other evidence in the record. Dkt. 14 at 19–20. Plaintiff alleges the ALJ did not provide any rationale for finding plaintiff's statements inconsistent with the record and did not identify any inconsistencies between plaintiff's testimony and his activities, medical records, or treatment history. *Id.* at 21.

Upon a "common-sense reading [of] the entirety" of the ALJ's opinion, *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004), it is obvious how and why the ALJ found plaintiff capable of light work despite dealing with fibromyalgia pain. As already discussed in this opinion, the ALJ referenced plaintiff's statements about his success managing his pain with medicine and herbal remedies, treating it with physical and Botox therapy, plaintiff's lack of follow up appointments regarding pain, the myriad exam findings of normal gait, strength, and range of motion, plaintiff's recent work history, his significantly active lifestyle, and his understanding of his own condition and how not to "overdo it" in a way that will cause him debilitating pain. The ALJ agreed that plaintiff's fibromyalgia and pain were significant impairments that demanded limitations, which are reflected in his RFC.

10

Considering the opinion as a whole, the ALJ offers more than sufficient evidence and explanation to find that plaintiff's subjective symptoms of pain are manageable with moderate accommodations to clear the low bar of substantial evidence, and the court will not disturb that conclusion.

ORDER

IT IS ORDERED that Plaintiff's motion, Dkt. 13, is DENIED.

Entered August 28, 2025.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge

11